# AFFIDAVIT

I, Detective Corporal Dwayne A. Mellis, being duly sworn, depose and state:

1.     I am a full time certified Police Officer for the City of Burlington. I have been employed with the Burlington Police Department since January 2009. I was certified by the Vermont Criminal Justice Training Council as a full time police officer in May of 2009. I am currently assigned to the Detective Services Bureau as a Drug Investigator. I have conducted or assisted in numerous drug investigations that have led to arrests and convictions in Vermont Superior Court.    During my assignment as a Police Officer with the Burlington Police Department, I was assigned to the Street Crimes Unit for approximately ten months. Throughout my assignments, I have investigated or assisted with the investigation of numerous drugs, drug related devices/paraphernalia and drug related evidence. I have seized or participated in seizures of different quantities of illegal drugs, controlled substances, user paraphernalia and other assorted items, such as money and property related to or acquired through the drug trade. I have seized or participated in seizures of various types of illegal drugs/narcotics during these investigations to include, powder cocaine, crack cocaine, marijuana, heroin, and numerous types of prescription medications. I have conducted or been involved in several drug investigations and from this experience I am familiar with the trends associated with the use and distribution of illegal drugs/controlled substances. I have also participated in specialized training which the primary focus was proactive criminal drug enforcement provided by the Vermont Criminal Justice Training Council. This training taught me interdiction techniques and to identify criminal drug activities and also the drugs associated. I have also successfully attended and completed a specialized 20-hour drug investigation course. This course has taught me techniques to include; undercover work, interdiction of drug houses, working with confidential informants as well as other topics involved in drug investigations. In addition, I have also successfully attended and completed the 80 hour, US Department of Justice, Drug Enforcement Administration (DEA) Basic Narcotics School.

2.     I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement officers who have participated in the investigation; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation.

3.     At a known date during the month of November 2016, I talked with a subject who was interested in providing information and cooperating with law enforcement. For ease of reading and confidentiality purposes this cooperating subject will be referred to as the pseudonym "CS 1" as well as the pronoun "it." CS 1 was advised if it provides any false information to law enforcement that it could face criminal charges. No threats or promises were made to this individual. The subject elected to enter into a Cooperating Subject agreement with the Burlington Police Department for monetary compensation.

4.     CS 1 has previously worked as a cooperating subject with the Burlington Police Department. During the time in which CS 1 has worked with the Burlington Police Department and other agencies it has provided reliable information and made several controlled law enforcement phone calls and drug purchases in which drugs have been purchased. As a result of CS 1's assistance Vermont State wire warrants and search warrants have been obtained and drugs have been seized. Lastly, CS 1's assistance has resulted in state and federal convictions for drug trafficking offenses. CS 1 has two convictions for Petit Larceny in the State of New York. In Vermont, CS 1 has the following convictions: Possession of Stolen Property, Vehicle Operation-License Suspension/OSC, Disorderly Conduct, Petit Larceny (x2), felonious Retail Theft, Unlawful Mischief, Simple Assault (x3), Forgery-Utter/Publish an Instrument, Aiding in the Commission of a Felony, Escape Custody-Furlough (x2), Leaving the Scene of an Accident, Retail Theft (misdemeanor) (x3), and Violation of Condition of Release.

5.     CS 1 advised that it was in a position to purchase heroin and crack cocaine from two individuals it knew as "P" and "Jim." CS 1 advised that it would contact "Jim" via phone number **(857) 990-8524** or **(774) 266-6194** and that it would contact "P" via phone number **(857) 274-2849** to arrange drug transactions. CS 1 advised that it has seen approximately four ounces of crack cocaine in "P's" possession. CS 1 further mentioned that "P" had a condition with his left eye. CS 1 mentioned that "Jim" would use runners to sell instead of doing the hand to hand in person. It should be noted that CS 1 also sent me a photograph it acquired of "Jim."

6.     I researched the name attached to the phone number given for "Jim" **(857) 990-8524** using an online law enforcement search engine and I found the phone number to be registered to Saquon Moore. The phone number for "P" **(857) 274-2849** did not have a registered name attached.

After confirming the phone number and comparing the photograph of Moore, "Jim" was identified as Moore and will hereinafter be referred to by his last name (Moore).

## CONTROLLED PURCHASE I

7.     During the week of November 27th, 2016, CS 1 advised that it was in the position to purchase heroin and crack cocaine (cocaine base) from Moore and "P." CS 1 advised it had recently received a text message from "P" advising that he was back in town. CS 1 said "P" advising that he was back in town means that he was in possession of drugs to be sold. CS 1 said it also saw both Moore and "P" and they were operating a newer model black Sport Utility Vehicle (SUV) with Massachusetts registration.

8.     On a different day during the week of November 27th, 2016, CS 1 met with me as it was in the position to purchase both heroin and crack cocaine (cocaine base) from both Moore and "P." CS 1 was searched prior to the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money. CS 1 was provided enough serialized US currency to complete the drug transaction. CS 1 was outfitted with an electronic audio transmitter device (security body wire) and an audio recorder to monitor the drug transaction. At my direction CS 1 made contact with "P" via phone number **(857) 274-2849** and arranged the drug transaction.

9.     CS 1 was instructed by "P" to meet at a known area within the City of South Burlington, VT. Prior to contacting "P," investigators established surveillance in the anticipated area where the drug transaction was expected to be conducted. CS 1 was transported to the known area where CS 1 was observed by investigators as it travelled to the meet location. During the surveillance of the meet location, investigators observed CS 1 meet with two occupants of a Black Ford Edge with MA registration 2FT832.

10.     On the morning of December 1, 2016, this Black Ford Edge was stopped by the University of Vermont Police Services Officer Dince for a speed violation. The operator of the vehicle at the time was identified as Rashad F. Phillips, with a date of birth of 12-27-91.[1] During this traffic stop, Phillip's passenger was identified as Moore.

---

[1] According to the National Crime Information Center (NCIC) criminal history report, Rashad F. Phillips is a documented alias used by Rashad R. Phillips. Rashad R. Phillips' date of birth is listed as December 17, 1991, but

11.     Surveillance officers identified the operator of the vehicle as Phillips. CS 1 conducted the drug transaction with the two inside the vehicle then exited the vehicle. After conducting the drug transaction CS 1 walked back to meet with me in my vehicle. CS 1 was monitored as it walked back to meet with me. Upon meeting with me, CS 1 handed me a known amount of suspected heroin that it purchased from Phillips who was the driver of the vehicle. CS 1 was again searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

12.     I conducted an audio recorded statement with CS 1 in regards to the drug transaction with the occupants inside the Black Ford Edge with MA registration 2FT832. CS 1 advised upon entering the vehicle it noticed that "P" (Phillips) was the operator and "Jim" (Moore) was the passenger. CS 1 advised that it exchanged the US currency with Phillips for a known amount of suspected heroin.

13.     The suspected heroin was field tested with a NARK II field test kit, which tested presumptive positive for heroin and it was tagged into evidence at the Burlington Police Department, tag number 52129. Laboratory testing by the Vermont Forensic Laboratory concluded the substance contained fentanyl.

## CONTROLLED PURCHASE II

14.     During the week of November 27th, 2016, I met CS 1 who advised that it was in the position to purchase crack cocaine (cocaine base) from Moore and Phillips. CS 1 was searched prior to the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money. CS 1 was provided enough serialized US currency to complete the drug transaction. CS 1 was outfitted with an electronic audio transmitter device (security body wire) and an audio recorder to monitor the drug transaction. At my direction CS 1 made contact with Phillips via phone number **(857) 274-2849** and arranged the drug transaction.

15.     CS 1 was instructed by Phillips to meet at a known area within the City of South Burlington, VT. Prior to contacting Phillips, investigators established surveillance in the anticipated

the NCIC criminal history report lists an alternative birth date for Phillips of December 27, 1991.

4

area where the drug transaction was expected to be conducted. CS 1 was transported to the known area where CS 1 was observed by investigators as it travelled to the meet location. During the surveillance of the meet location, investigators observed CS 1 meet with Moore and Phillips inside the Black Ford Edge with MA registration 2FT832. Surveillance officers again identified the operator of the vehicle as Phillips and the passenger Moore. CS 1 conducted the drug transaction with the two inside the vehicle then exited the vehicle.

16.     After conducting the drug transaction CS 1 walked back to meet with me in my vehicle. CS 1 was monitored as it walked back to meet with me. Upon meeting with me, CS 1 handed me a known amount of suspected crack cocaine (cocaine base) that it purchased from Phillips. CS 1 was again searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

17.     I conducted an audio recorded statement with CS 1 in regards to the drug transaction with Phillips and Moore inside the Black Ford Edge with MA registration 2FT832. CS 1 advised upon entering the vehicle it noticed that "P" (Phillips) was the operator and "Jim" (Moore) was the passenger. CS 1 advised that it exchanged the US currency with Phillips for a known amount of crack cocaine (cocaine base).

18.     The suspected crack cocaine was field tested with a NARK II field test kit, which tested presumptive positive for cocaine and it was tagged into evidence at the Burlington Police Department, tag number 52131. Laboratory testing by the Vermont Forensic Laboratory found the suspected crack cocaine to contain cocaine. Preliminary chemical spot testing indicated the item to be in the form of cocaine base, but structural confirmation testing was not performed. Based on my training and experience, the substance has the appearance of cocaine base.

## CONTROLLED PURCHASE III

19.     During the week of December 4th, 2016, I met CS 1 who advised that it was in the position to purchase crack cocaine (cocaine base) from Moore. CS 1 was searched prior to the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money. CS 1 was provided enough serialized US currency to complete the drug transaction. CS 1 was outfitted with an electronic audio transmitter device (security body wire) and an audio recorder

to monitor the drug transaction. At my direction CS 1 made contact with Moore via phone number **(774) 266-6194** and arranged the drug transaction.

20.     Upon calling Moore CS 1 advised that Phillips answered the phone call. CS 1 was instructed by Phillips to meet at a known area within the City of South Burlington, VT. While talking with Phillips, investigators established surveillance in the anticipated area where the drug transaction was expected to be conducted. CS 1 was transported to the known area where CS 1 was observed by investigators as it travelled to the meet location. During the surveillance of the meet location, investigators observed CS 1 meet with Phillips inside the Black Ford Edge with MA registration 2FT832. CS 1 conducted the drug transaction with Phillips inside the vehicle then exited the vehicle.

21.     After conducting the drug transaction CS 1 walked back to meet with me in my vehicle. CS 1 was monitored as it walked back to meet with me. Upon meeting with me, CS 1 handed me a known amount of suspected crack cocaine (cocaine base) that it purchased from Phillips. CS 1 was again searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

22.     I conducted an audio recorded statement with CS 1 in regards to the drug transaction with Phillips inside the Black Ford Edge with MA registration 2FT832. CS 1 advised upon entering the vehicle it exchanged the US currency with "P" (Phillips) for a known amount of crack cocaine (cocaine base).

23.     The suspected crack cocaine (cocaine) was field tested with a NARK II field test kit, which tested presumptive positive for cocaine and it was tagged into evidence at the Burlington Police Department, tag number 52222. Laboratory testing by the Vermont Forensic Laboratory found the suspected crack cocaine to contain cocaine. Preliminary chemical spot testing indicated the item to be in the form of cocaine base, but structural confirmation testing was not performed. Based on my training and experience, the substance has the appearance of cocaine base.

# CONTROLLED PURCHASE IV

24.     During the week of December 4th, 2016, I met CS 1 who advised that it was in the position to purchase heroin from Phillips. CS 1 was searched prior to the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money. CS 1 was provided enough serialized US currency to complete the drug transaction. CS 1 was outfitted with an electronic audio transmitter device (security body wire) and an audio recorder to monitor the drug transaction. At my direction CS 1 made contact with Phillips via phone number **(857) 274-2849** and arranged the drug transaction.

25.     CS 1 was instructed by Phillips to meet at a known area within the City of South Burlington, VT. Prior to contacting Phillips, investigators established surveillance in the anticipated area where the drug transaction was expected to be conducted. CS 1 was transported to the known area where CS 1 was observed by investigators as it travelled to the meet location. During the surveillance of the meet location, investigators observed CS 1 meet with Phillips inside the Black Ford Edge with MA registration 2FT832. CS 1 conducted the drug transaction with Phillips inside the vehicle then exited the vehicle.

26.     After conducting the drug transaction CS 1 walked back to meet with me in my vehicle. CS 1 was monitored as it walked back to meet with me. Upon meeting with me, CS 1 handed me a known amount of suspected heroin that it purchased from Phillips. CS 1 was again searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

27.     I conducted an audio recorded statement with CS 1 in regards to the drug transaction with Phillips inside the Black Ford Edge with MA registration 2FT832. CS 1 advised upon entering into the vehicle it exchanged the US currency with "P" (Phillips) for a known amount of heroin.

28.     The suspected heroin was field tested with a NARK II field test kit, which tested presumptive positive for heroin and it was tagged into evidence at the Burlington Police Department, tag number 52223. Laboratory testing by the Vermont Forensic Laboratory concluded the substance contained fentanyl.

## CONTROLLED PURCHASE V

29.     During the week of December 18th, 2016, I met CS 1 who advised that it was in the position to purchase heroin and crack cocaine (cocaine base) from Phillips. CS 1 was searched prior to the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money. CS 1 was provided enough serialized US currency to complete the drug transaction. CS 1 was outfitted with an electronic audio transmitter device (security body wire) and an audio recorder to monitor the drug transaction. It should be noted on December 16th, 2016; I applied and was granted a search warrant to monitor the conversation between CS 1, Phillips and Moore. The warrant was signed by the Honorable Judge Alison Arms. At my direction CS 1 made contact with Phillips via phone number **(857) 274-2849** and arranged the drug transaction.

30.     CS 1 was instructed by Phillips to meet at a known area within the City of Burlington, VT. Prior to contacting Phillips, investigators established surveillance in the anticipated area where the drug transaction was expected to be conducted. CS 1 was transported to the known area where CS 1 was observed by investigators as it travelled to the meet location. During the surveillance of the meet location, investigators observed CS 1 meet with Phillips inside the Black Volkswagen Tiguan with NC registration EBP2011. CS 1 conducted the drug transaction with Phillips inside the vehicle then exited the vehicle.

31.     After conducting the drug transaction CS 1 walked back to meet with me in my vehicle. CS 1 was monitored as it walked back to meet with me. Upon meeting with me, CS 1 handed me a known amount of suspected heroin and crack cocaine (cocaine base) that it purchased from Phillips. CS 1 was again searched after the controlled purchase and was found to have no illegal drugs, paraphernalia or large sums of money.

32.     I conducted an audio recorded statement with CS 1 in regards to the drug transaction with Phillips inside the Black Volkswagen Tiguan with NC registration EBP2011. CS 1 advised upon entering into the vehicle it exchanged the US currency with "P" (Phillips) for a known amount of suspected heroin and a known amount of crack cocaine (cocaine base).

33.     The suspected heroin was field tested with a NARK II field test kit, but after a series of test I was unable to identify the substance.  Laboratory testing concluded the suspected heroin

contained fentanyl. I also field tested a sample of the crack cocaine (cocaine base), which tested presumptive positive for cocaine and both substances were it was tagged into evidence at the Burlington Police Department, tag number 52502. Both substances were submitted Vermont Forensic Laboratory for chemical analysis. The suspected cocaine base was found to contain cocaine. Preliminary chemical spot testing indicated the item to be in the form of cocaine base, but structural confirmation testing was not performed. Based on my training and experience, the substance has the appearance of cocaine base.

## COOPERATING SUBJECT 2

34. At a known date during the month of December 2016, I talked with a subject who was interested in providing information and cooperating with law enforcement. For ease of reading and confidentiality purposes this cooperating subject will be referred to as the pseudonym "CS 2" as well as the pronoun "it". CS 2 was advised if it provides any false information to law enforcement that it could face criminal charges. No threats or promises were made to this individual. The subject elected to enter into a Cooperating Subject agreement with the Burlington Police Department and agreed to provide active cooperation in exchange for monetary compensation.

35. CS 2 has previously worked as a cooperating subject with the Burlington Police Department. During the time in which CS 2 has worked with the Burlington Police Department it has provided reliable information and made several controlled phone calls and drug purchases in which drugs have been purchased on behalf of law enforcement. As a result of CS 2's assistance, Vermont State wire warrants and search warrants have been obtained and drugs have been seized. Lastly, CS 2's assistance has resulted in state convictions for drug trafficking offenses. CS 2 has the following criminal convictions which include Disorderly Conduct Obstructing Vehicle or Pedestrian, Petit Larceny $900 or Less (x2), Vehicle Operation-Careless or Negligent (x2), Retail Theft $900 or Less (x2), Assault-Simple, Cocaine-Possession <2.5 GM, Vehicle Operation-License Suspended #1 For DUI (x3), False Info-LE Officer/Implicate Another, Leaving Scene of Crash-Property Damage, Retail Theft $100 or Less, Violation of Abuse Prevention Order x6, Violation of Conditions of Release (x3), Assault-Domestic, Disorderly Conduct, and Alcohol – Minor Possession.

36.     CS 2 advised that it was in a position to purchase heroin and crack cocaine (cocaine base) from two individuals who worked together distributing both drugs within the Burlington area. CS 2 said it knew both individuals as "Jay" and "P." CS 2 described both "Jay" and "P" as black males. CS 2 advised that it would contact "Jay" via phone number **(774) 266-6194** and that it would contact "P" via phone number **(857) 274-2849** to arrange drug transactions. CS 2 advised that it has seen approximately one half ounce to a baseball size quantity of crack cocaine (cocaine base) in "Jay's" possession. CS 2 advised that "P" had a damaged left eye.

37.     Based on the previous five (5) controlled purchases, I identified "Jay" as Saquon Moore DOB: 02-02-89 and "P" as Rashad R. Phillips DOB: 12-27-91. The phone numbers that CS 1 identified for Jim/Moore and P/Phillips are the same telephone numbers that CS 2 provided for "Jay" and "P."

## CONTROLLED PURCHASE VI

38.     During the week of January 8th, 2017, I met CS 2 who advised that it was in the position to purchase crack cocaine (cocaine base) from Moore. It should be noted prior to meeting with CS 2; it contacted Moore via phone number **(774) 266-6194** to see if he had crack cocaine (cocaine base) and was willing to meet CS 2 in a known area within the City of Burlington. CS 2 was searched prior to the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money. CS 2 was provided enough serialized US currency to complete the drug transaction. CS 2 was outfitted with an electronic audio transmitter device (security body wire) and an audio recorder to monitor the drug transaction.

39.     It should be noted on January 4th, 2017; I applied for and was granted a search warrant to monitor the conversation between (CS 1 and CS 2), Phillips, and Moore. The warrant was signed by the Honorable Judge Nancy Waples.

40.     At my direction CS 2 made contact with Moore via phone number **(774) 266-6194** and arranged the drug transaction. CS 2 advised Moore that it would meet him in the previously planned location within the City of Burlington, VT. Prior to contacting Moore, investigators established surveillance in the anticipated area where the drug transaction was expected to be conducted. CS 2 was transported to the known area where CS 2 was observed by investigators as it travelled to the meet location. During the surveillance of the meet location, investigators observed

CS 2 meet with Moore and Phillips inside a Brown Hyundai Santa Fe with MA registration 4DX967. Surveillance officers identified the operator of the vehicle as Phillips. A front passenger was observed inside the vehicle and the passenger was later identified as Moore. CS 2 conducted the drug transaction with the two inside the vehicle and then exited the vehicle.

41.     After conducting the drug transaction CS 2 walked back to meet with me in my vehicle. CS 2 was monitored as it walked back to meet with me. Upon meeting with me, CS 2 handed me a known amount of suspected crack cocaine (cocaine base) that it purchased from Moore who was identified as the front passenger in the vehicle. CS 2 was again searched after the controlled purchase and it was found to have no illegal drugs, paraphernalia or large sums of money.

42.     I conducted an audio recorded statement with CS 2 in regards to the drug transaction with Moore inside the Brown Hyundai Santa Fe with MA registration 4DX967. CS 2 advised upon entering the vehicle it noticed "P" (Phillips) was the operator and "Jay" (Moore) was the passenger. CS 2 advised that it exchanged the US currency with Moore for a known amount of crack cocaine (cocaine base).

43.     The suspected crack cocaine was field tested with a NARK II field test kit, which tested presumptive positive for cocaine and it was tagged into evidence at the Burlington Police Department, tag number 52771.   Based on my training and experience, the substance has the appearance of cocaine base.

44.     On January 24th, 2017, at approximately 1226 hours, I was in an unmarked vehicle traveling through the parking lot of the Travelodge, 1016 Shelburne Rd in South Burlington, VT. Upon exiting the parking lot of the Travelodge to the parking lot of the New England Federal Credit Union parking lot, I observed a male matching the description of Phillips. I soon parked my vehicle in the parking lot of the bank and I was able to capture the male on video as he walked to the north side of the Burlington Bagel & Café, 992 Shelburne Rd in South Burlington, VT. After a few minutes the male was seen walking back to the area of the hotel, talking on his phone. I was able to positively identify the male as Phillips after seeing his face. I watched Phillips walked up to the hotel room number 126 which is located on the ground level of the complex, stood by the door briefly as he was on the phone and then entered the room.

45.    Detective Corporal Stoughton, continued surveillance of the area and he witnessed Moore and Phillips meeting with numerous individuals inside different vehicles and soon after returned to their hotel room, which is room number 126 at the Travelodge. It should be noted that amongst the individuals meeting with Moore and Phillips, are known drug users within Chittenden County, VT.

46.    At approximately 4:30 pm on January 24, 2017, I obtained a state search warrant for Room 126 of the Travelodge from the Honorable James Crucitti, a Vermont Superior Court Judge for Chittenden County.

47.    At approximately 5:50 pm, surveillance observed both Moore and Phillips exit room 126 and walk to the Simon's Liquor Outlet, which is in the immediate area of the Travelodge. Upon their exit from the store, Moore and Phillips were detained by law enforcement. After his detention, I observed Phillips, and confirmed that Phillips has a condition with his left eye, as observed by CS 1 and CS 2.

48.    Shortly after the detention of Moore and Phillips, law enforcement executed the state search warrant on room 126 of the Travelodge. Inside the room was a woman, who was identified by her Massachusetts Driver's License as Ariana Close. During the search, law enforcement seized approximately 98 grams of suspected cocaine base. The suspected cocaine base was field tested and the result was a presumptive positive for cocaine. Based upon the appearance of the substance and my training and experience, I believe the substance to be cocaine base. Also during the search, 27 grams of a white powdery substance. This substance is suspected to be fentanyl, and was not tested for officer safety purposes. Law enforcement also located a digital scale and plastic sandwich baggies. Based upon my training and experience, I know these items to be commonly used in the packaging of cocaine base. Finally, law enforcement seized approximately $16,000 of United States currency during the search of the motel room.

49.    Based on my training and experience, 98 grams of cocaine base is inconsistent with being a personal-use quantity.

50.    Moore was provided his Miranda warnings, which he waived. During his interview by law enforcement, Moore was confronted about the search of the room where Ariana was located, to which Moore replied he was "not staying nowhere." He also stated he had no hotel room rented

12

in his name.  He claimed to be in Burlington staying with woman named Vanessa who stayed north of Church Street.  Moore stated that shortly before his detention by law enforcement, he had received a ride to the Burlington Bagel Café by a friend, to get food, but it was closed.  After finding it closed, he walked to the Simon's Liquor Outlet next door.  At the liquor store, Moore claimed he encountered Phillips, whom he knew from Boston.

Dated at Burlington, Vermont, this 25th day of January, 2017.

DWAYNE A. MELLIS
Detective Corporal
Burlington Police Department

Sworn to and subscribed before me this 25th day of January, 2017.

HONORABLE JOHN M. CONROY
United States Magistrate Judge