UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Docket No. 2:17-CR-05 |
| | ) |
| SAQUON MOORE, | ) |
|    Defendant. | ) |

OPPOSITION TO DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

Defendant Saquon Moore – who is currently residing in a residential re-entry center in Boston, Massachusetts – has not demonstrated that any medical conditions make him particularly susceptible to severe illness or death from COVID-19. As a result, the Court should find that the defendant has not shown the extraordinary and compelling reasons necessary to grant his compassionate release request. He is further ineligible because his offense conduct and history demonstrate that he continues to pose a danger to the community. Even if he were eligible for compassionate release, he has not met his burden of showing that immediate release is warranted after a balancing of the factors set forth in 18 U.S.C. § 3553(a). Moore's motion should therefore be denied.

I.      FACTS AND PROCEDURAL HISTORY

        A.      Relevant Facts

From approximately September of 2016 through January 24, 2017, Moore conspired with Rashad Phillips, William Theodore, Michelle West, and Joyce Audette, and others, to distribute fentanyl and cocaine base throughout Chittenden and Franklin counties. During December of 2016 and January of 2017, law enforcement conducted six controlled purchases of fentanyl and cocaine base from Moore and his co-conspirators. On January 24, 2017, law enforcement seized

1

6.8 grams of cocaine base and 4.85 grams of fentanyl from a vehicle occupied by Moore and Phillips, as well as an additional 90 grams of cocaine base, 15 grams of fentanyl, and $16,000 from a hotel room they had occupied. Moore had multiple other police interactions during the course of the conspiracy. In his plea agreement (Doc. 138), Moore stipulated to the following additional facts:

- Moore and his coconspirators purchased fentanyl and cocaine base in Massachusetts, worked jointly to transport these controlled substances to Vermont by automobile, and worked jointly to distribute both fentanyl and cocaine base in Franklin and Chittenden counties.

- Moore and his coconspirators typically distributed the controlled substances out of various automobiles, meeting customers in the parking lots of various commercial establishments.

- He and his coconspirators used the residence at 98 Shady Lane in Colchester to package both cocaine base and fentanyl for distribution.

- Moore used at least three "runners" who would transport controlled substances to customers on his behalf.

- In total, the conspiracy involved in excess of 24 grams of fentanyl and in excess of 114 grams of cocaine base, all of which was reasonably foreseeable to Moore.

  B. <u>Relevant Procedure</u>

Moore was arrested on January 24, 2017 and charged by way of a criminal complaint the following day. A federal grand jury returned an indictment on January 26, 2017, charging Moore with possession with intent to distribute 28 grams or more of a mixture and substance containing cocaine base. On January 27, 2017, United States Magistrate Judge John M. Conroy ordered the defendant detained. Among other things, Judge Conroy found, pursuant to 18 U.S.C. § 3142(g), that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. Doc. 15. Moore pled guilty to Count One of the Third Superseding Indictment – a charge carrying a 5-year mandatory minimum

sentence – on January 5, 2018. On April 30, 2018, the Court sentenced Moore to 63 months of imprisonment – the high end of the applicable guidelines imprisonment range – to be followed by 4 years of supervised release.

        C. <u>Moore's Incarceration</u>

Moore has been designated to the Coolidge House Residential Reentry Center in Boston, Massachusetts. Coolidge House is a 120-bed community correctional facility housing both male and female federal offenders.[1] It is "designed to provide support, resources and the use of life skills training to assist residents in community reintegration and successful completion of the program." Coolidge House places emphasis on "aiding residents with employment, vocational and financial management needs and assisting residents in overcoming substance abuse issues, as well as constructive use of leisure time."

On May 13, 2020, Moore's counsel submitted a request for compassionate release to the Director of Coolidge House. The request was denied, and thus the instant motion is ripe for judicial consideration. As of June 3, 2020, Community Resources for Justice, Inc. – the parent agency of Coolidge House – had 7 inmates and no staff members who were currently positive for COVID-19.

II.      <u>STATUTORY BACKGROUND</u>

A judgment of conviction that includes a term of imprisonment is a final judgment and can be modified only in limited circumstances. *See generally United States v. Dillon*, 560 U.S. 817, 825 (2010). When it enacted the Sentencing Reform Act in 1984, Congress gave district judges limited authority to reduce a defendant's sentence, for what has come to be known as

---

[1] https://www.rip.uscourts.gov/sites/rip/files/coolidgehousehandbook.pdf

compassionate release, under 18 U.S.C. § 3582(c)(1)(A). Until 1994, that provision set forth only a single eligibility factor: the defendant must present "extraordinary and compelling reasons" for a sentence reduction. Pub. L. 98-473 § 212, 1984 U.S.C.C.A.N. (98 Stat.) 1998-99.

In the Violent Crime Control Act of 1994, Congress bifurcated § 3582(c)(1)(A), re-designating as subsection (i) the "extraordinary and compelling reasons" ground. In addition, in a new subsection (ii), Congress established a second set of early-release criteria for prisoners who were at least 70 years old, had served at least 30 years in prison, and whom the Bureau of Prisons had determined were not a danger to any person or the community. Pub. L. 103-322 § 70002, 1994 U.S.C.C.A.N. (108 Stat.) 1984-85. In either case, the court could decrease a sentence only after the Bureau of Prisons first moved for such reduction. Section 3582(c)(1)(A) further cautioned that any reduction must be consistent with applicable policy statements issued by the Sentencing Commission.

Congress did not define "extraordinary and compelling reasons" as that term appears in Section 3582. Instead it directed the Sentencing Commission to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" that "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).[2] The

---

[2] The Commission's policy statement is likely binding on the court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010) (the Commission's pertinent policy statements are binding on the court where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"). *But see United States v. Burbidge*, 2019 WL 4863481, at *2 (D.N.D. Oct. 2, 2019) (noting the policy statement has not been updated since the First Step Act, that the Sentencing Commission lacks a quorum, and concluding the Sentencing Commission's existing policy statement provides only "limited guidance"); *United States v. Rivernider*, No. 3:10-CR-222(RNC), 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019) (policy statement provides "helpful guidance.")

Sentencing Commission's policy statement appears at U.S.S.G. § 1B1.13. It states that the Court "may reduce a term of imprisonment" if "extraordinary and compelling reasons" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Commission's Application Note 1 to § 1B1.13 lists examples of what constitute "extraordinary and compelling reasons," explaining:

> Provided the defendant [is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant. –
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). . . .
> > (ii) The defendant is –
> > > (I) suffering from a serious physical or medical condition,
> > > (II) suffering from a serious function or cognitive impairment, or
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances –
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case and extraordinary and compelling reason other than or in connection with the reasons described in subdivisions (A) through (C).

The First Step Act, passed on December 21, 2018, broadened the class of prisoners who could obtain judicial review of compassionate release requests by limiting BOP's screening role in the process. After exhausting administrative remedies, an inmate now may move directly in the district court for a sentence reduction. Notably, however, the First Step Act did not in any way change or enlarge the two eligibility criteria for relief; in this respect, the statute remains just as it did in 1994. *United States v. Ebbers*, 2020 WL 91399 *4 (S.D.N.Y. Jan. 8, 2020) ("Although the history and text of the First Step Act suggest that Congress intended to broaden the availability of compassionate release (its title is 'Increasing the Use and Transparency of Compassionate Release'), Congress in fact only expanded access to the courts; it did not change the standard." (citing cases)).

Section 3582(c)(1)(A), as amended, now provides in pertinent part:

**(c) Modification of an Imposed Term of Imprisonment.** —The court may not modify a term of imprisonment once it has been imposed except that —

(1) in any case —

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —

> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Even if the Court were to find "extraordinary and compelling reasons," it must still find the defendant is not a danger to the safety of any other person or the community after analyzing the applicable factors under 18 U.S.C. § 3142(g). They include (1) the nature of the offense of conviction, including whether the offense involved a controlled substance; (2) the history and characteristics of the person; and (3) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Finally, after determining that "extraordinary and compelling reasons" exist and that release would not pose a danger to the safety of any other person or the community, the Court still must rebalance the sentencing factors under 18 U.S.C. § 3553(a). *See United States v. Ebbers*, No. S4 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) ("[T]he existence vel non of 'extraordinary and compelling reasons' determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release."); *United States v. Israel*, No. 05 CR 1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. . . . [Section 3582] was drafted using the word 'may,' not 'must.'"). The section 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct . . . ; and (D) to provide the defendant with needed . . .

medical care;" [and ] (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Moore has the burden of demonstrating he is entitled to a reduction in his sentence. *See Butler*, 970 F.2d at 1026.

Importantly, the question before the Court when considering a motion pursuant to 18 U.S.C. § 3582(c)(1)(A) is resentencing, not temporary designation to home confinement. This Court is empowered only to shorten the sentence, and impose a term of probation or supervised release with or without conditions that could include home confinement. 18 U.S.C. § 3582(c)(1)(A). Only "the Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (*per curiam*); *see also* 18 U.S.C. § 3621(b). As such, the only manner of achieving home confinement that is available to the Court is an exceedingly blunt one: curtailing the sentence to the equivalent of "time-served" and immediately beginning supervised release with a condition of home confinement.

III. EXTRAORDINARY AND COMPELLING REASONS

The mere existence of COVID-19, absent an aggravating factor, is not itself an "extraordinary and compelling reason" warranting compassionate release. However, an inmate with a physical or medical condition may be able to demonstrate an "extraordinary and compelling reason" if the prisoner has a chronic medical condition that renders the prisoner substantially more susceptible to an adverse outcome from COVID-19. Determining whether an extraordinary and compelling reason exists will depend on the nature of the inmate's medical condition, the nature of the impact of the condition on a potential COVID-19 prognosis, and the prevalence of COVID-19 in the defendant's facility. The factors set forth in U.S.S.G. § 1B1.13

8

and its commentary explicitly require compassionate release be based upon inherently specific and individual circumstances. A worldwide pandemic is a general circumstance which affects everyone, and thus theoretically makes every inmate eligible for relief. The Third Circuit recently recognized this principle:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like [defendant]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.

*Raia,* 2020 WL 1647922 at *2 (3d Cir. Apr. 2, 2020). Other district courts have similarly denied motions for compassionate release for the same reason. *See United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) ("As defendant does not assert that he is suffering from a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)"); *United States v. Edwards*, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020) (granting release to immunosuppressed inmate with brain cancer but noting that "[n]otwithstanding the understandable concerns many will have about the spread of COVID-19 in institutional settings, the compassionate relief mechanism will not afford relief to many inmates.").

With regard to the instant motion, Moore has not met his burden to show that he has medical conditions which would make a COVID-19 infection particularly dangerous. The PSR, written in 2018, details the defendant's statement that he was "in shape" and not prescribed any medications. PSR ¶ 71. Similarly, records from the defendant's incarceration in Massachusetts indicate that in 2015 he had "no current medical restrictions." Doc. 171-1. The government has so far been unsuccessful in obtaining Moore's medical records from the Bureau of Prisons.

Moore's motion claims that he suffers from asthma, but the PSR further details the defendant's statement that he "previously" suffered from asthma, and had no need for an inhaler. PSR ¶ 71. There is no evidence to indicate that Moore, if he even has asthma, suffers from moderate or severe asthma.[3] Such a finding would be necessary to support a determination that his medical condition rises to the level of extraordinary and compelling reasons as defined in Section 3582.

IV.     SECTION 3553(a) FACTORS AND DANGER TO THE COMMUNITY

The factors set forth in section 3553(a) continue to support the Court's imposition of a 63-month term of imprisonment, and Moore continues to pose a danger to the community. Not only did Moore distribute large quantities of deadly controlled substances, he in fact organized the efforts of a number of others who engaged in this same conduct on his behalf. This conduct commenced just ten weeks after the conclusion of a 14-year term of incarceration. Further, Moore had multiple police interactions in the midst of his offense, none of which appear to have had a deterrent effect given that Moore's distribution of controlled substances continued unabated.

Perhaps most concerning is Moore's conviction for assault with intent to murder. Moore (then 14 years old) and a fellow gang member rode their bikes to confront a 16-year-old in front of a house in Roxbury, Massachusetts. Moore's coconspirator shot the 16-year-old several times, and as the victim lay bleeding on the ground, Moore walked up and shot him multiple times, leaving him a quadriplegic. Subsequent jail calls revealed that Moore attempted to have witnesses killed and evidence hidden. During his subsequent 14-year term of incarceration, Moore incurred numerous disciplinary infractions, including multiple aggravated assaults of

---

[3] The CDC guidelines for those at high risk of complications from COVID-19 only include those with moderate or severe asthma. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

corrections officers and other inmates, as recently as 2015. He was kept in isolation "due to his impulsive and unpredictable behavior." Doc. 171-1.

The Court must deny the Moore's motion unless it determines that he is not a danger to the safety of any other person or to the community. The circumstances of the Moore's prior conviction, coupled with his behavior during his incarceration as well as the instant offense conduct, demonstrates that he indeed poses a danger to the community pursuant to 18 U.S.C. § 3142(g). As a result, the Court should find that he is ineligible for release on this basis alone.

Notwithstanding his history and characteristics, Moore has been afforded the opportunity to reside at Coolidge House, which provides him with a valuable chance to transition to the community. Granting Moore's motion would negate his ability to take advantage of the resources provided to him by Coolidge House, including assistance with employment, vocational and financial management needs, overcoming substance abuse issues, and constructive use of leisure time." The removal of these supports could jeopardize Moore's efforts to successfully re-enter society.

V. CONCLUSION

Moore has failed to show extraordinary and compelling reasons to reduce his sentence as required by 18 U.S.C. § 3582, and he continues to pose a danger to the community. Further, the sentence he requests would be contrary to the purposes of sentencing established by 18 U.S.C. § 3553(a). Moore's motion should therefore be denied.

Dated at Burlington, in the District of Vermont, this 3rd day of June, 2020.

        Respectfully submitted,

        UNITED STATES OF AMERICA

        CHRISTINA E. NOLAN
        United States Attorney

By:   */s/ Nathanael T. Burris*
        NATHANAEL T. BURRIS
        Assistant U.S. Attorney
        P.O. Box 570
        Burlington, VT 05402-0570
        (802) 951-6725
        nate.burris@usdoj.gov